CHICAGO-ALLIS MANUFACTURING CORPORATION, Plaintiff-Appellee, *v.* FAIR EMPLOYMENT PRACTICES ·COMMISSION *et al.,* Defendants.—(CLEOTHA WILLIAMS, Defendant-Appellant.)

(No. 61340; )

First District (5th Division)—September 26, 1975.

*Rehearing denied October 24, 1975.*

Thomas P. Stillman, of Chicago, and Harvey A. Kurtz, Law Student, for appellant.

James Robert Cox and J. Paige Clousson, both of Chicago, for appellee.

Mr. JUSTICE LORENZ delivered the opinion of the court:

Defendant, Cleotha Williams, appeals from an order of the circuit court of Cook County reversing a decision in his favor by the Illinois Fair Employment Practices Commission (Commission). Defendant contends that he was discharged because of his race in violation of the Illinois Fair Employment Practices Act. Ill. Rev. Stat. 1973, ch. 48, par. 851 *et seq.*

On November 19, 1971, defendant filed a charge of unfair employment practice with the Commission against plaintiff, his employer. He alleged that he had been the victim of racial discrimination and had been terminated without cause. After informal attempts to reach a conciliation failed, the Commission held a public hearing before a hearing examiner on October 4, 1972, at which time defendant Cleotha Williams testified on his own behalf.

*Cleotha Williams*

He had been employed by plaintiff as a paint sprayer for 11 years. He is black. On October 8, 1971, his foreman, Edward Krok, approached him

and told him to stop talking. Although Krok threatened to give him a letter of reprimand, he continued to talk. Krok gave him a letter and he threw it on the table. Krok then sprayed him with a mace-like substance in his one good eye. He reached for Krok and they struggled. Thereafter he was taken to Corbett Clinic and treated for burns on his eye, chest and leg. During a subsequent visit to the clinic he was told to call Miss Beck, a secretary for plaintiff, who notified him of his termination. Plaintiff never contacted him about his version of the fight. On cross-examination, he admitted that he had received two prior letters of reprimand.

*Veodis Jones testified for plaintiff*

He is the quality control inspector for plaintiff and the union steward for defendant's union. He is black. He was on good terms with defendant and he had assisted defendant once when defendant's job was in jeopardy. On the morning of October 8, 1971, Krok told him that he intended to give defendant a letter of reprimand. Later he saw defendant push Krok and saw Krok fall to the floor. Defendant kicked Krok when Krok was on the floor. While defendant was holding Krok's leg, Krok reached into his pants' pocket, pulled out a can, and sprayed defendant. After the fight Krok's shirt was off, his glasses were smashed and he had blood around his mouth. He did not see Krok hit defendant at any time. On cross-examination, he admitted that he had given a prior inconsistent statement to an insurance company in which he said Krok had hit defendant.

*Edward Krok*

He was the foreman of defendant's department. He is white. On the morning in question defendant was "shouting and disturbing the whole department" causing other workers to stop their duties and look up to see what was happening. He verbally warned defendant once. After presenting the letter to defendant and while walking back to his office, he was struck from behind. He felt his shirt being torn. As he turned around he was struck in the face and his glasses were broken. He was kicked in his back, chest and kidneys and grabbed by the legs and twisted. Thereupon, he reached in his pocket and sprayed Protect-U behind him at defendant. He was off from work completely for 10 days and was on part-time for a few months after the altercation. He had previously allowed defendant to report to work early to avoid the parking problem. He had bought defendant soft drinks. He is not covered by the provisions of the collective bargaining agreement because he is management personnel.

*Paul Perry*

He is plaintiff's plant superintendent. He talked to defendant approximately one week before the fight about defendant's decreased produc-

tion of painted parts. He issued the termination letter after he had talked to both Jones and Krok. Jones told him that defendant approached Krok from behind. He also talked to defendant, but cannot remember the substance of the conversation. He answered a union grievance letter in this matter. The union did not appeal to arbitration. He confirmed that a supervisor is not subject to the union contract.

On November 29, 1972, the hearing examiner filed his "Recommended Order and Decision," specifically finding that defendant "after receiving the letter of reprimand, made physical contact with Edward Krok and that Krok thereafter sprayed petitioner with a chemical substance." He determined that an inference of discrimination arose when plaintiff relied upon the word of a single white when most of the employees were black and recommended that defendant be reinstated with all lost wages paid and all seniority restored.

On December 12, 1973, after plaintiff petitioned the Commission to review the decision of the hearing examiner, the Commission entered its own Order and Decision upholding defendant's charge of discrimination and adopting the relief recommended by the hearing examiner.

Plaintiff then filed a complaint in the circuit court for administrative review of the Commission's Order and Decision. The Commission thereupon answered. The trial court reversed the Commission's order as being against the manifest weight of the evidence and this appeal follows:

OPINION

Defendant contends that he was discharged on account of his race in violation of the Illinois Fair Employment Practices Act (Ill. Rev. Stat. 1973, ch. 48, par. 851 *et seq.*). He argues that plaintiff conducted an improper investigation of the altercation by not interviewing both himself and his coworkers. Therefore, we note at the outset that the questions of who actually started the fight between defendant and Krok and whether an illegal substance was in fact sprayed are immaterial to this appeal. Any minimal relevance which those questions might possess in being an impetus to plaintiff to conduct a more thorough investigation is far outweighed by the evidence actually discovered in the course of Perry's investigation.

Defendant incorrectly argues that the findings and conclusions of the Commission must be held to be prima facie correct by the reviewing court. Section 11 of the Administrative Review Act clearly states that only questions of fact need be regarded as prima facie true and correct. (Ill. Rev. Stat. 1973, ch. 110, par. 274.) Therefore, a legal determination of discrimination is not presumptively established by the Commission's order.

In order to establish an act of discrimination, defendant must prove

that a member of the abused class was treated differently than a non-member in a similar investigation. He is not required to prove an intent to discriminate when the consequences of the action establish a clear case of discrimination. (*Griggs v. Duke Power Co.*, 401 U.S. 424, 28 L.Ed.2d 158, 91 S.Ct. 849.) Nonetheless, defendant's evidence does not establish differential treatment based upon race.

In the instant case, Paul Perry, the plant superintendent, conducted the investigation and discharged defendant. It is undisputed that he interviewed both defendant's own union representative and his immediate supervisor. The fact that Krok, defendant's supervisor was also the victim of defendant's attack is only a factor to be weighed against his status as management's representative at the investigation and his eyewitness testimony. Moreover, Jones's testimony as defendant's union representative substantially corroborates Krok's account of the incident. Defendant's attacks on Jones's credibility are belied by Jones's actions which clearly demonstrated a concern for defendant. Jones himself told defendant to disregard the letter of reprimand and let the union handle the matter for him. He quickly came to defendant's assistance during the fight. Moreover, he filed a grievance letter on defendant's behalf concerning the incident.

Perry applied Shop Rule #20 which states that fighting is "strictly forbidden at any time while on company premises" and that a failure to observe the rule is a sufficient reason for discharge. The purpose of the rule is to promote in-plant harmony. The rule applies to all employees regardless of race. Defendant does not deny that he is covered by the rule.

In *Olin Corp. v. Fair Employment Practices Com.*, 5 Ill.App.3d 921, 284 N.E.2d 413, the corporation did not commit an unfair labor practice under the Illinois Fair Employment Practices Act when it discharged a black employee under a similar no-fighting rule after he attacked a white employee who used pejorative language while on the job. Here, we find it crucial that Krok was more than just a fellow employee. He was the defendant's direct supervisor. The goal of in-plant peace cannot be achieved if employees can fight supervisors with impunity. At worst, such occurrences indicate poor labor-management relations, not racial bigotry.

Similar cases from other jurisdictions recognize the principle that discharges based upon in-plant fighting do not raise an inference of discrimination merely because the race of the employee and his supervisor are different. In *Lazard v. Boeing Co.*, 6 FEP Cases 354 (E.D. La. 1972), the discharge of a black employee who assaulted his white supervisor with an extrusion bar was held not to violate the Civil Rights Act of 1964. Similarly, in *McGraw v. General Motors Corp.*, 6 FEP Cases 338 (E.D.

Mo. 1973), the discharge of an employee who threw automobile wheels at his foreman was not racially motivated merely because the employee was black and the foreman was white. Therefore, we do not believe that any inference of discrimination on Perry's part arises by the mere fact of discharge when defendant's conduct so clearly comes under the prohibition of the shop rule.

Finally, defendant's union presented a grievance letter on his behalf concerning the altercation. After management replied to that letter, the union decided against taking the matter any further although the collective bargaining agreement provided for arbitration. We recognize that an arbitrator's decision on an issue of discrimination would not bind this court to a similar finding. (*Alexander v. Gardner-Denver Co.*, 415 U.S. 36; 39 L.Ed.2d 147, 94 S.Ct. 1011.) Nonetheless, we note that defendant's own union did not pursue the claim of discrimination after making its own inquiries.

For the reasons stated above, we affirm the order of the circuit court finding the Commission's Order to be against the manifest weight of the evidence.

Affirmed.

BARRETT, P. J., and SULLIVAN, J., concur.